# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| PRESTON CLARK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:12-0350 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

In this case seeking judicial review of denial of Supplemental Security Income benefits, Plaintiff Preston Clark has filed a Motion for Summary Judgment [Doc. # 20] ("Plaintiff's Motion"). Defendant Michael J. Astrue, Commissioner of Social Security, also has filed a Motion for Summary Judgment [Doc. # 21] ("Defendant's Motion") and a Memorandum in Support [Doc. # 22] ("Defendant's Memorandum"), to which Plaintiff has responded. *See* Docs. # 23, # 24. The motions now are ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendant's Motion should be **denied**, that Plaintiff's Motion should be **granted**, and that this case should be **remanded** to the Commissioner for further proceedings.

## I.  BACKGROUND

### A.  Procedural Background

Clark filed an application for Supplemental Security Income ("SSI") benefits with the Social Security Administration ("SSA") on November 30, 2008, alleging disability beginning June 2, 2008.  The claim was denied initially and on reconsideration.  On May 1, 2009, Clark filed a new application for SSI benefits, which was combined with the previous application.  Clark then requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the denial of benefits.

On May 19, 2010, ALJ Tom C. Strafuss held a hearing in Houston, Texas, but continued the hearing for addition of a psychological expert.[1]  On August 3, 2010, ALJ Strafuss held a second hearing.[2]  Clark was represented by current counsel and testified at the hearing. Daniel Hamill, Ph.D., a medical expert, and Cheryl Swisher, a vocational expert, both appeared and testified.  In a decision dated August 31, 2010, the ALJ denied Clark's application for benefits.[3]  On December 12, 2011, the Appeals Council denied Clark's request for re view, rendering the ALJ's decision final.[4]

---

[1]    R. 60-79.

[2]    R. 36-59.

[3]    R. 10-28.

Clark filed this case on February 1, 2012, seeking judicial review of the Commissioner's denial of his claim for benefits.

## B.   Factual Background

Clark alleges disability beginning June 2, 2008, when he was 19 years old. The record in this case extends back to 2001 and show multiple childhood diagnoses including bipolar disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), and depression. The records further demonstrate persistent, repeated behavioral problems at school and home. His mother called police on several occasions due to his angry and violent behavior. Due to behavior problems at school, including threats of violence against a teacher, he was sent to Crockett State School, a juvenile detention facility. From there, because of an altercation with a guard, he was transferred to an adult detention facility. He was released by the Texas Department of Criminal Justice in June 2008.[5]

On February 10, 2009, shortly after Clark applied for benefits, he was scheduled for a psychiatric assessment with Kenneth Arfa, M.D. Clark did not keep the appointment.[6] Subsequent records show multiple, unsuccessful attempts to contact

---

[4]   R. 1-5.

[5]   R. 43.

[6]   R. 339.

him.[7]

On August 28, 2009, Clark appeared for a consultative examination with Ross E. Keiser, Ph.D.[8] Clark stated that he had been living in his mother's house and previously was in shelter for three months, but was evicted for "acting crazy." He further stated that he could not hold a job, and previously had worked in fast food for three months until he "got into it with the management."[9] He reported that he had been diagnosed with bipolar disorder at age 13 and had four or five mood swings daily, which interfered with his ability to work. He had been treated on an inpatient basis multiple times in the past, but currently was not receiving any treatment. He was not currently taking any medications but stated he "does better on medication."[10] Dr. Keiser's summary states, "The claimant does not give symptoms of bipolar disorder" and "[n]either does he appear to have a psychotic, anxiety, or mood disorder."[11] However, his DSM-IV Diagnostic Impression lists under Axis II "Mixed Personality Disorder with histrionic, narcissistic, and antisocial features," and gives his prognosis

---

[7] R. 352.

[8] R. 354-60.

[9] R. 356.

[10] R. 356.

[11] R. 359.

as "poor" due to untreated antisocial personality disorder.[12]

A Psychiatric Review Technique completed on September 11, 2009, reviewed the consultative examination and noted a personality disorder and allegations of bipolar disorder. The narrative states that despite the current lack of medications and behavioral treatment, Clark "appear[ed] to be able, if he put[] forth an average effort, to procure and maintain employment."[13]

On October 13, 2009, Clark was treated at the Settegast Clinic. He was referred to psychiatry for a consult because he was off medications and treatment for his bipolar disorder. He reported mood swings, anger outbursts, crying and depression.[14] On January 26, 2010, Clark did not show for his appointment with a clinic psychiatrist.[15] He was instructed to reschedule the appointment.[16]

On April 23, 2010, Clark presented to the MHMR Crisis Unit for treatment of bipolar disorder.[17] He reported that he had been off of his medications for four years before seeking help from "MCOT," and now was feeling better after having been back

---

[12] R. 359.

[13] R. 373.

[14] R. 494-95.

[15] R. 505.

[16] R. 503.

[17] R. 627-59.

on his medications for four weeks.[18] He stated he had a history that included mood swings, agitation, spending sprees, and racing thoughts, and that before seeking help recently he "was having a lot of anger problems 'punching holes in the walls', mood swings, easily irritated, racing thoughts, poor concentration, and decreased sleep and appetite."[19] Since beginning medication, he denied these symptoms, although he had poor appetite as a side effect of the medication. He stated that he understood the need to stay on his medications, and that he planned to return to his previous psychiatrist if his Medicaid was reinstated.[20] He was continued on his medications and told to return to the clinic in five weeks.[21]

Several weeks later, on May 19, 2010, Clark had an administrative hearing before ALJ Strafuss.[22] After hearing Clark's testimony about his medical and criminal history, the ALJ asked if Clark currently was on medications, and Clark answered that he was.[23] Clark testified that the medications were helping with

---

[18]   R. 633.

[19]   R. 633.

[20]   R. 633.

[21]   R. 638.

[22]   R. 60-79.

[23]   R. 76.

controlling his mood and outbursts, but made him tired and sleepy.[24] The ALJ then stated that he was going to bring in a psychological expert, and would reschedule the hearing.[25]

Nine days later, on May 28, 2010, Clark missed his appointment at the MHMR Crisis Unit.[26] He did not respond to the clinic's "no-show" letter mailed on June 1, 2010, and his file with the MHMR Crisis Unit was closed on June 15, 2010.[27]

On August 3, 2010, Clark had his second hearing with ALJ Strafuss. He testified that he was taking medications as prescribed.[28] The medical expert, Dr. Hamill, testified that Clark had responded to medications for bipolar disorder, although he was "not out of the woods yet."[29]

---

[24]  R. 77.

[25]  R. 78.

[26]  R. 629.

[27]  R. 628-29.

[28]  R. 41.

[29]  R. 46.

On August 31, 2010, the ALJ denied Clark's application for benefits, finding that he was not under a disability since the date of his application.

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.[30]  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31]  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[32]

## III.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to

---

[30]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

[31]   FED. R. CIV. P. 56(a).  *See Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

[32]   *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

two inquiries: first, whether the final decision is supported by substantial evidence on the record as a whole and, second, whether the Commissioner applied the proper legal standards to evaluate the evidence.[33] "Substantial evidence" is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[34] It is more than a mere scintilla and less than a preponderance.[35]

When applying the substantial evidence standard on review, the court scrutinizes the record to determine whether such evidence is present.[36] In determining whether substantial evidence of disability exists, the court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[37] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[38] Alternatively, a finding of no substantial

---

[33] *See Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

[34] *Audler*, 501 F.3d at 447 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[35] *Id.*; *Perez*, 415 F.3d at 461; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[36] *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[37] *Perez*, 415 F.3d at 462 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

[38] *Id.* at 461 (citing *Richardson*, 402 U.S. at 390); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).

evidence is appropriate if no credible evidentiary choices or medical findings support the decision.[39]  The court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.[40]  In short, conflicts in the evidence are for the Commissioner, not the courts, to resolve.[41]

## IV. ANALYSIS

### A. Statutory Basis for Benefits

Clark applied for Supplemental Security Income (SSI) benefits.  SSI benefits are authorized by Title XVI of the Social Security Act, and provide an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line.[42]  Eligibility for SSI is based on proof of disability[43] and indigence.[44]  A claimant applying to the SSI program cannot receive payment for any period of disability predating the month in which he applies for benefits, no matter how long he

---

[39] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

[40] *Audler*, 501 F.3d at 447; *Masterson*, 309 F.3d at 272.

[41] *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272.

[42] 20 C.F.R. § 416.110.

[43] 42 U.S.C. § 1382c(a)(3) (definition of disability).

[44] 42 U.S.C. §§ 1382(a) (financial requirements).

has actually been disabled.[45] Thus, the month following an application fixes the earliest date from which SSI benefits can be paid. Eligibility for SSI, unlike eligibility for Social Security disability benefits, is not dependent on insured status.

"Disability" is defined by the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[46] The law and regulations governing the determination of disability for SSI are the same as those governing determinations for Social Security disability benefits.[47]

### B.  Determination of Disability

When determining whether a claimant is disabled, an ALJ must engage in a five-step sequential inquiry, as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment in Appendix 1 of the regulations; (4) whether the claimant is capable of performing past relevant

---

[45]  *Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); 20 C.F.R. § 416.335.

[46]  42 U.S.C. § 1382c(3)(A).

[47]  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

work; and (5) whether the claimant is capable of performing any other work.[48] The claimant has the burden to prove disability under the first four steps.[49] If the claimant successfully carries this burden, the burden shifts to the Commissioner at Step Five to show that the claimant is capable of performing other substantial gainful employment that is available in the national economy.[50] Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut the finding.[51] A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.[52]

In this case, the ALJ determined at Step One that Clark had not engaged in substantial gainful activity since November 30, 2008, his application date. At Step Two, he found that Clark had four severe impairments: obesity; bipolar disorder, mixed; personality disorder, not otherwise specified; and volitional poly-substance abuse, in early full remission. He rejected Clark's claim that a heart murmur and

---

[48] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453. The Commissioner's analysis at Steps Four and Five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations. *Perez*, 415 F.3d at 461-62. The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

[49] *Perez*, 415 F.3d at 461; *Myers*, 238 F.3d at 619.

[50] *Perez*, 415 F.3d at 461; *Masterson*, 309 F.3d at 272; *Greenspan*, 38 F.3d at 236.

[51] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[52] *Perez*, 415 F.3d at 461 (citing 20 C.F.R. § 404.1520(a)).

elevated blood pressure were additional severe impairments. At Step Three, he found that Clark's impairments, considered singly or in combination, did not meet or medically equal an impairment listed in the Social Security regulations.

Before proceeding to Step Four, the ALJ found that Clark had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels." However, he found the following nonexertional limitations:

> [Clark] can do only simple, repetitive, 1 to 3 step tasks; he may not work at a forced or assembly line pace; he should have only occasional interaction with co-workers and only incidental interaction with the general public. [Clark] is able to deal with standardized situations with occasional variables; he is able to attend and concentrate for extended periods and respond appropriately to changes in routine work settings; and he is able to stay on task and maintain a 40-hour work week.[53]

At Step Four, the ALJ determined that Clark had no past relevant work. At Step Five, he determined that, considering Clark's age, education, work experience, and RFC, he was capable of performing jobs that exist in significant numbers in the national economy, including housekeeper, yard worker, and office cleaner. He therefore concluded that Clark was not disabled.

### C. Plaintiff's Argument for Reversal

Clark argues that the ALJ erred when he failed to consider whether Clark had a good reason for his noncompliance with prescribed treatments, in violation of Social

---

[53] R. 17-18 (footnote omitted).

Security Ruling 82-59 and federal regulations.[54] Social Security Ruling 82-59 is a policy statement regarding a claimant's failure to follow prescribed treatment. The statement provides:

> An individual who would otherwise be found to be under a disability, but who fails *without justifiable cause* to follow treatment prescribed by a treating source which the [SSA] determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability.[55]

SSA 82-59 further provides that the SSA "must" make "appropriate development" of the record to resolve whether a claimant who fails to comply with treatments is "justifiably" failing to do so.[56] If the failure is justifiable, such failure cannot preclude a finding of disability.[57] Moreover, before finding that the failure was not justifiable, the SSA must inform the claimant of the potential finding and must provide the

---

[54] *See* 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled").

[55] SSR 82-59, 1982 WL 31384, at *1 (1982) (emphasis added). *Accord Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability").

[56] SSR 82-59, at *2.

[57] *Id*. at *3. *See Lindsey v. Astrue*, 2011 WL 817173, * 9 n. 4 (N.D. Tex. March 9, 2011) (Stickney, M.J.) ("Before making a finding of noncompliance, the ALJ must provide the claimant with (i) notice of the effect of noncompliance on his application for benefits, (ii) occasion to explain any seeming noncompliance, and (iii) opportunity to undergo the prescribed treatment. If the ALJ fails to provide the claimant with an opportunity to address the issue, he loses the ability to assert it as a reason for denying disability benefits") (citing SSR 82-59).

claimant with the opportunity to show that the failure was justifiable.[58]

In this case, the ALJ's assessment of Clark's RFC—and therefore, his conclusion that Clark was not disabled—clearly was dependent upon Clark's compliance with medical treatment. He assessed Clark's RFC as "a full range of work at all exertional levels," with the following nonexertional limitations:

> [Clark] can do only simple, repetitive, 1 to 3 step tasks; he may not work at a forced or assembly line pace; he should have only occasional interaction with co-workers and only incidental interaction with the general public. [Clark] is able to deal with standardized situations with occasional variables; he is able to attend and concentrate for extended periods and respond appropriately to changes in routine work settings; and he is able to stay on task and maintain a 40-hour work week.[59]

Elsewhere in the opinion, the ALJ identified these identical capacities as dependent on compliance: "***with medication compliance*** the claimant would be able to deal with standardized situations with occasional variables; attend and concentrate for extended periods; respond appropriately to changes in routine work settings; and [] stay on task

---

58      SSR 82-59, at *5 ("Based on the evidence in file, SSA may decide that it appears that the claimant or beneficiary does not have a good reason for failing to follow treatment as prescribed by a treating source and that the treatment is expected to restore ability to engage in any SGA (or gainful activity, as appropriate). However, ***before a determination is made***, the individual, or in the case of incapable individuals the person acting on their behalf, will be informed of this fact and of its effect on eligibility for benefits. *The individual will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so.* It is very important that the individual fully understand the effects of failure to follow prescribed treatment. . . . ") (emphasis added).

59      R. 17-18 (footnote omitted).

and maintain a 40-hour work week."[60]

Several federal appellate courts have recognized that a mental impairment can be the cause of noncompliance with treatment. In *Pate-Fire v. Astrue*, the Eighth Circuit held, "Although none of the listed circumstances [in SSR 82-59] pertain to mental illness, federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself and, therefore, neither willful nor without a justifiable excuse."[61] Similarly, in *Kangail v. Barnhart*, Judge Posner, writing for the Seventh Circuit, vacated an ALJ's denial of benefits to a woman who suffered from bipolar disorder, which denial was based on the assumption that "she could work when she took her medicine."[62] The Court vacated the ALJ's decision because, among other reasons, the ALJ had failed to consider the possibility that "mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment."[63]

In this case, although the ALJ noted repeatedly that Clark had frequently been

---

[60] R. 22 (emphasis added).

[61] *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (alterations and internal quotation marks omitted) (citing, *inter alia*, *Mendez v. Chater*, 943 F. Supp. 503, 508 (E.D. Pa. 1996), *Brasheras v. Apfel*, 73 F. Supp. 2d 648, 650-52 (W.D. La. 1999)).

[62] *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006).

[63] *Id*.

noncompliant with treatment in the past and had failed to attend medical appointments, he attributed this failure solely to Clark's volition. The ALJ stated:

> When [Clark] takes his medications as prescribed, he experiences fewer problems with rules. However, the prescribed medications make him feel sluggish, tired, and out of control.[64]

He further stated:

> [Clark] apparently does well when taking his psychotropic medications as prescribed, but he has voluntarily chosen not to consistently follow through with treatment. Failure to follow treatment without a good reason is relevant to the disability evaluation process. *See* 20 C.F.R. § 416.930. Such failure indicates a lack of motivation to help himself or to legitimately enter the workforce.[65]

Later in the opinion, when summing up the medical and psychological evidence, the ALJ stated:

> The claimant apparently does well when on medication, but he has chosen not to follow through consistently with treatment, which indicates a lack of motivation to help himself or to enter the workforce.[66]

He then held that, based on Clark's RFC, he was not disabled.

The ALJ did not evaluate the impact of Clark's mental impairments on his compliance with prescribed treatment. He did not analyze the question of whether Clark's past noncompliance, which was within Clark's eligibility period, was justified.

---

[64]     R. 18.

[65]     R. 19.

[66]     R. 22.

Rather, he found (without citation to the record) that Clark's past noncompliance was volitional. Moreover, this finding was made without proper inquiry or adherence to the procedural safeguards of SSR 82-59.[67] Although Clark's attorney did not raise the issue at hearing, or question Clark or any witnesses about Clark's reasons for noncompliance, SSR 82-59 places the duty of inquiry on the SSA if noncompliance is to be a basis for denial.[68] Because SSR 82-59 was not followed, this case must be remanded to the Commissioner for further proceedings.

Additionally, because the ALJ assumed compliance with medication when making his determination, he did not squarely decide whether Clark is disabled when ***not*** taking his medication. The procedures mandated by SSR 82-59 apply only to claimants who would otherwise be disabled within the meaning of the Act.[69] This

---

[67]  *Cf. Pates-Fire*, 564 F.3d at 946-67 ("the ALJ's determination [that] Pate–Fires's medical noncompliance is attributable solely to free will is tantamount to the ALJ 'playing doctor,' a practice forbidden by law").

[68]  SSR 82-59 ("SSA may decide that it appears that the claimant or beneficiary does not have a good reason for failing to follow treatment as prescribed . . . However, before a determination is made, the individual . . . will be informed of this fact and of its effect on eligibility for benefits. The individual will be afforded an opportunity . . . to show justifiable cause for failing to do so."). *See Robinson v. Barnhart*, 366 F.3d 1078, 1083-84 (10th Cir. 2004) (case remanded because ALJ failed to give claimant or her physician the opportunity to explain the specific reasons for her failure to take medications, so as to determine whether justifiable cause existed for her failure to do so) (citing 20 C.F.R. §§ 404.1530, 416.930, SSR 82-59).

[69]  SSR 82-59, at *1 ("Individuals with a *disabling impairment* which is amenable to treatment that could be expected to restore their ability to work must follow the
(continued...)

issue also should be addressed on remand.

Finally, the fact that the ALJ's determinations regarding noncompliance were couched in terms of the RFC determination does not mean that the requirements of SSR 82-59 are inapplicable.[70] It is true, as Defendant argues, that SSR 82-59 need not be followed when the ALJ considers the claimant's non-compliance only in connection with the claimant's credibility and with the severity of the claimant's subjective symptoms.[71] However, in Clark's case, the ALJ did not consider his noncompliance merely in assessing the credibility of his subjective complaints. Rather, the ALJ made findings that Clark's past noncompliance was based on free

---

[69] (...continued)
prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment.") (emphasis original). *See Mack v. Commissioner of Social Security*, 420 F. App'x 881, 882-83 (11th Cir. 2011); *Holley*, 253 F.3d at 1092.

[70] *See Fall v. Astrue*, 2012 WL 6026438, *10 (S.D. Tex. Dec. 4, 2012) (Stacy, M.J.) ("Where it can be ascertained from the ALJ's decision that it is the claimant's non-compliance that forms the basis of . . . either the ALJ's RFC determination or the ultimate disability determination, whether the ALJ states so or not, SSR 82-59 must be followed."); *Lindsey*, 2011 WL 817173, at *8 (an "ALJ cannot circumvent the requirements of SSR 82-59 . . . by couching her analysis of substance abuse and noncompliance in terms of an RFC determination.").

[71] *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (SSR 82-59 does not apply because the "ALJ used the evidence of [claimant's] noncompliance solely to weigh the credibility of [claimant's] subjective claims of pain"); *Fall*, 2012 WL 6026438, at *10. *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (ALJ properly considered claimant's failure to take medication for pain as grounds for finding his complaints lacked credibility; there was no record evidence, other than claimant's testimony, that he would be disabled with or without medical treatment).

choice, and crafted an RFC that was dependent upon compliance with treatment.

The ALJ did not adhere to SSR 82-59, which required him to consider whether Clark had justifiable cause for his past failure to undergo prescribed treatment. Therefore, he did not apply the proper legal standards to evaluate the evidence in this case, and the case will be remanded.[72] On remand, the ALJ should develop the record regarding whether Clark's noncompliance with his treatment regimen was caused by his mental illness or by rational choice, and otherwise comply with SSR 82-59.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 21] is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 20] is **GRANTED**. This case is **REMANDED** to the Commissioner for further proceedings in accordance with this opinion.

SIGNED at Houston, Texas, this **8th** day of **January, 2013**.

Nancy F. Atlas
United States District Judge

---

[72] *See Audler*, 501 F.3d at 447.